FRANCIS PEARCE *v.* CITY OF NEW HAVEN
(AC 22958)

Foti, Flynn and Healey, Js.

Argued February 20—officially released April 29, 2003

*Thomas E. Farver*, for the appellant (plaintiff).

*Michael McAuliffe*, for the appellee (defendant).

*Opinion*

FLYNN, J. The plaintiff, Francis Pearce, appeals from the decision of the workers' compensation review board (board) affirming the determination by the workers' compensation commissioner (commissioner) that the

plaintiff's claim for benefits was untimely. We affirm the board's decision.

The following facts are not in dispute. The plaintiff, after passing a preemployment physical in 1978, began working for the New Haven fire department. In August, 1988, the plaintiff began seeing Dr. Mark Kasper, his family physician. On August 16, 1988, the plaintiff's blood pressure was taken three times, with readings of 180 over 94, 178 over 104 and 156 over 94, respectively. Kasper informed the plaintiff that he had an elevated reading. During 1988, Kasper also asked the plaintiff to report to him on a monthly basis in order to have his blood pressure checked.

On June 1, July 12 and November 21, 1989, and January 11, June 12 and August 9, 1990, the plaintiff's blood pressure continued to be elevated with readings ranging from 140 over 98 to 170 over 110. Kasper advised the plaintiff to change his diet and to lose weight. A blood pressure monitor was also prescribed to assist the plaintiff with the daily monitoring of his blood pressure, and Kasper requested that the plaintiff keep a diary of his blood pressure readings.

The plaintiff saw Kasper on a regular basis between 1988 and 1990, and Kasper discussed with the plaintiff his high blood pressure on nearly every visit. Kasper thought that the plaintiff's high blood pressure results might be due to "white coat hypertension"[1] because the results were higher when taken at the physician's office.[2]

[1] Kasper explained that "white coat hypertension" results from someone becoming anxious because of an office visit, causing his or her blood pressure to increase.

[2] The commissioner included in her findings that Kasper also testified that his thinking on the subject of "white coat hypertension" had changed over the years. Kasper now believes that "if you have office hypertension, you have hypertension."

The plaintiff did not see Kasper between 1990 and 1998, but, while at the Hospital of Saint Raphael in 1993, the plaintiff's blood pressure was recorded at 172 over 100. Kasper wrote a letter to the plaintiff on October 17, 1995, requesting that he come to Kasper's office because Kasper was concerned about the plaintiff's blood pressure and cholesterol. Additionally, James Dougherty, a cardiologist, after reviewing the plaintiff's medical chart, concluded that "there is extensive data in the record dating back to 1988, 1989 and 1990 where multiple blood pressure readings were obtained which clearly demonstrate modest, sustained essential hypertension." The plaintiff, however, was not diagnosed with hypertension until October 15, 1998.

On November 13, 1998, the plaintiff filed a form 30C,[3] claiming a date of injury of October 15, 1998, resulting from his diagnosis of hypertension and being prescribed medication for that condition. The plaintiff claimed entitlement to workers' compensation benefits pursuant to General Statutes § 7-433c,[4] commonly referred to as the

[3] A form 30C is the document prescribed and recommended by the workers' compensation commission for use in filing a notice of claim under the Workers' Compensation Act. See General Statutes § 31-294c.

[4] General Statutes § 7-433c (a) provides in relevant part: "Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance to the contrary, in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and from the municipal or state retirement system under which he is covered, he or his dependents, as the case may be, shall receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the

Heart and Hypertension Act. After formal hearings were held, the commissioner determined that the plaintiff's claim for benefits was untimely, and he dismissed the claim.

Following the denial of his motion to "correct the finding of dismissal," the plaintiff appealed to the board, which affirmed the determination of the commissioner that the plaintiff's claim was untimely. This appeal followed.

"At the outset, we must determine the appropriate standard of review when a decision of a commissioner is appealed to the [board]. A decision of a commissioner granting or denying an award may be appealed to the [board] pursuant to General Statutes [§ 31-301] . . . ." (Internal quotation marks omitted.) *Six* v. *Thomas O'Connor & Co.*, 235 Conn. 790, 797, 669 A.2d 1214 (1996). General Statutes (Rev. to 1997) § 31-301 provides in relevant part: "(a) At any time within ten days after . . . a decision of the commissioner . . . either party may appeal . . . to the [board] . . . .

"(b) The appeal shall be heard by the [board] as provided in section 31-280b. The [board] shall hear the appeal on the record of the hearing before the commissioner, provided, if it is shown to the satisfaction of the board that additional evidence or testimony is material and that there were good reasons for failure to present it in the proceedings before the commissioner, the [board] may hear additional evidence or testimony.

"(c) Upon the final determination of the appeal by the [board], but no later than one year after the date the appeal petition was filed, the [board] shall issue its decision, affirming, modifying or reversing the decision of the commissioner. The decision of the [board] shall

course of his employment, and was suffered in the line of duty and within the scope of his employment. . . ."

include its findings, conclusions of law and award.
. . ."

"It is clear that under General Statutes § [31-301] and
§ 31-301-8 of the Regulations of Connecticut State Agen-
cies[5] the review division's hearing of an appeal from
the commissioner is not a de novo hearing of the facts.
Although the review division may take additional mate-
rial evidence, this is proper only if it is shown to its
satisfaction that good reasons exist as to why the evi-
dence was not presented to the commissioner. Other-
wise, it is obliged to hear the appeal on the record and
not retry the facts. . . . . [Our Supreme Court has]
stated: [T]he power and duty of determining the facts
rests on the commissioner, the trier of facts. . . . The
conclusions drawn by him from the facts found must
stand unless they result from an incorrect application
of the law to the subordinate facts or from an inference
illegally or unreasonably drawn from them." (Citations
omitted; internal quotation marks omitted.) *Fair* v. *Peo-
ple's Savings Bank*, 207 Conn. 535, 538–39, 542 A.2d
1118 (1988).

"It matters not that the basic facts from which the
[commissioner] draws this inference are undisputed
rather than controverted. . . . It is likewise immaterial
that the facts permit the drawing of diverse inferences.
The [commissioner] alone is charged with the duty of

[5] Section 31-301-8 of the Regulations of Connecticut State Agencies pro-
vides: "Ordinarily, appeals are heard by the compensation review [board]
upon the certified copy of the record filed by the commissioner. In such
cases the [board] will not retry the facts or hear evidence. It considers no
evidence other than that certified to it by the commissioner, and then for
the limited purpose of determining whether the finding should be corrected,
or whether there was any evidence to support in law the conclusion reached.
It cannot review the conclusions of the commissioner when these depend
upon the weight of the evidence and the credibility of witnesses. Its power
in the corrections of the finding of the commissioner is analogous to, and
its method of correcting the finding similar to the power and method of the
Supreme Court in correcting the findings of the trial court."

initially selecting the inference which seems most reasonable and his choice, if otherwise sustainable, may not be disturbed by a reviewing court." (Citation omitted; internal quotation marks omitted.) Id., 540.

The plaintiff claims that the commissioner improperly concluded that his claim for benefits was untimely because he was not diagnosed with, placed on medication for, or disabled by hypertension until October 15, 1998. The plaintiff argues that the commissioner should have corrected his findings to include the fact that the defendant was not placed on high blood pressure medication until October 15, 1998. This fact, the plaintiff argues, would establish that he was not disabled until that date.

The defendant argues that the plaintiff suffered from hypertension in the years 1988, 1989 and 1990, and that, as the commissioner concluded, the plaintiff should have filed a notice of claim at that time. The plaintiff acknowledges that he had high blood pressure readings between 1988 and 1990; his dispute, however, appears to be with the manner in which the commissioner interpreted § 7-433c to require a firefighter that is told he or she has high blood pressure readings to file a claim despite not being placed on medication, losing time from work or being disabled. We are persuaded that, in reviewing the relevant legal principles in conjunction with the facts found by the commissioner, the board correctly upheld her decision that the plaintiff's claim for benefits was untimely, regardless of the additional facts that the plaintiff sought to have added to the commissioner's findings.

A review of the relevant statutory provisions is necessary to resolve the plaintiff's claim properly. "The statute concerning heart disease and hypertension was originally drafted as part of the Workers' Compensation Act and provided police officers and firefighters with

a rebuttable presumption that heart disease and hypertension were causally connected to their occupations. *Morgan* v. *East Haven*, 208 Conn. 576, 580, 546 A.2d 243 (1988). In 1969, this rebuttable presumption was made conclusive and the statute was soon declared unconstitutional in *Ducharme* v. *Putnam*, 161 Conn. 135, 143, 285 A.2d 318 (1971). In response to that problem, § 7-433c was enacted in its present form in 1977 as legislation separate and distinct from the Workers' Compensation Act. *Morgan* v. *East Haven*, supra, 581." *Zaleta* v. *Fairfield*, 38 Conn. App. 1, 7, 658 A.2d 166, cert. denied, 234 Conn. 917, 661 A.2d 98 (1995).

"General Statutes § 7-433c gives a special compensation to those who qualify, in the sense that they have no burden of proof that the disease resulted from the employee's occupation or that it occurred in the course of employment. The mere fact that the employee has hypertension or heart disease and dies or is disabled because of it is all that is necessary. The employee does not need to prove that his heart disease is causally connected to his employment." (Internal quotation marks omitted.) *Salmeri* v. *Dept. of Public Safety*, 70 Conn. App. 321, 337, 798 A.2d 481, cert. denied, 261 Conn. 919, 806 A.2d 1055 (2002). "In order to collect the benefits provided by § 7-433c, a claimant need show only that he or she is a uniformed member of a paid fire department or a regular member of a paid police department, whose preemployment physical examination revealed no evidence of hypertension or heart disease, who now suffers a condition or an impairment of health caused by hypertension or heart disease that has resulted in death or disability, and has suffered a resultant economic loss." *Zaleta* v. *Fairfield*, supra, 38 Conn. App. 5. "[O]nce the conditions of § 7-433c are met, benefits must be paid by the municipality in accordance with the Workers' Compensation Act." *Salmeri* v. *Dept. of Public Safety*, supra, 338–39.

Nevertheless, "[our Supreme Court] has stated on many occasions that [t]he procedure for determining recovery under § 7-433c is the same as that outlined in chapter 568, presumably because the legislature saw fit to limit the procedural avenue for bringing claims under § 7-433c to that already existing under chapter 568 rather than require the duplication of the administrative machinery available [under the act] and further burden the courts and the municipalities [with additional litigation from claims by firemen and policemen pursuant to this legislation]." (Internal quotation marks omitted.) *Gauger* v. *Frankl*, 252 Conn. 708, 712, 752 A.2d 1077 (2000).

"[A] claimant for workers' compensation benefits must provide both notice of injury; General Statutes § 31-294b[6] . . . and notice of a claim. General Statutes § 31-294c[7] . . . . *Funaioli* v. *New London*, 52 Conn. App. 194, 195, 726 A.2d 626 (1999) (first report of injury together with letter from claimant's lawyer stating that

[6] General Statutes § 31-294b provides in relevant part: "Any employee who has sustained an injury in the course of his employment shall immediately report the injury to his employer, or some person representing his employer. . . ."

[7] General Statutes § 31-294c (a) provides in relevant part: "No proceedings for compensation under the provisions of this chapter shall be maintained unless a written notice of claim for compensation is given within one year from the date of the accident or within three years from the first manifestation of a symptom of the occupational disease, as the case may be, which caused the personal injury, provided, if death has resulted within two years from the date of the accident or first manifestation of a symptom of the occupational disease, a dependent or dependents, or the legal representative of the deceased employee, may make claim for compensation within the two-year period or within one year from the date of death, whichever is later. Notice of a claim for compensation may be given to the employer or any commissioner and shall state, in simple language, the date and place of the accident and the nature of the injury resulting from the accident, or the date of the first manifestation of a symptom of the occupational disease and the nature of the disease, as the case may be, and the name and address of the employee and of the person in whose interest compensation is claimed. . . ."

claimant not requesting hearing at this time sufficient to satisfy notice of claim requirement of § 31-294c). [T]he written notice intended is one which will reasonably inform the employer that the employee is claiming or proposes to claim compensation under the [Workers' Compensation] Act. *Rehtarchik* v. *Hoyt-Messinger Corp.*, 118 Conn. 315, 317, 172 A. 353 (1934); *Black* v. *London & Egazarian Associates, Inc.*, 30 Conn. App. 295, 303, 620 A.2d 176, cert. denied, 225 Conn. 916, 623 A.2d 1024 (1993). The purpose of § 31-294 [notice of injury and of claim for compensation], in particular, is to alert the employer to the fact that a person has sustained an injury that may be compensable . . . and that such person is claiming or proposes to claim compensation under the Act. . . . . *Black* v. *London & Egazarian Associates, Inc.*, supra, 303." (Internal quotation marks omitted.) *Pernacchio* v. *New Haven*, 63 Conn. App. 570, 575–76, 776 A.2d 1190 (2001).

The commissioner found that the plaintiff, although receiving repeated counsel from his family physician, Kasper, that his blood pressure was elevated during the years 1988, 1989 and 1990, failed to notify the defendant that he had elevated readings. Such notification is required by §§ 31-294b and 31-294c, despite whether those symptoms cause immediate permanent or partial disability. The reason for prior notice is to inform the employer of a possibility of a claim for benefits being filed at a later time. See id., 576. The employee need not be disabled at the time he or she files a notice that symptoms are being experienced related to hypertension or heart disease; the notice is required to alert the employer to a potential claim. See id., 573–76 (firefighter filed report of injury for high blood pressure in 1989, diagnosed with hypertension in 1992, placed on medication for hypertension in 1994 and filed notice of claim for compensation, form 30C, in 1996 with the

stated date of injury of 1989); see also *Funaioli* v. *New London*, supra, 52 Conn. App. 195–98.

In this case, the plaintiff failed to file a notice of injury or claim until 1998, despite having been repeatedly informed by his physician that his blood pressure readings, during 1988, 1989 and 1990, were elevated. Accordingly, the commissioner's conclusion that the plaintiff's claim for benefits was untimely reflects a proper application of the law to the facts of this case.

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.