## RONALD HUNT *v.* BOROUGH OF NAUGATUCK
### (SC 17205)

Sullivan, C. J., and Borden, Norcott, Palmer and Zarella, Js.

98

Argued December 1, 2004—officially released March 22, 2005

*William J. Ward,* for the appellant (defendant).

*Andrew J. Morrissey,* for the appellee (plaintiff).

*Opinion*

ZARELLA, J. The defendant, the borough of Naugatuck, appeals from the order of the Appellate Court dismissing its appeal from a decision rendered by the compensation review board (board) in favor of the plaintiff, Ronald Hunt. The defendant claims that the Appellate Court improperly concluded that it lacked subject matter jurisdiction over the appeal on the ground that the board's decision did not constitute a final judgment. We agree with the defendant and, accordingly, reverse the order of the Appellate Court.

The following facts and procedural history are relevant to our resolution of this appeal. The defendant hired the plaintiff as a police officer on October 13, 1995, after he had passed a mandatory preemployment physical examination. In November, 2000, the plaintiff

had his blood pressure checked and became concerned that the reading was abnormally high. He subsequently scheduled an appointment with Edmund P. Quinn, an internist, who examined the plaintiff on November 21, 2000. Although Quinn did not prescribe any medication for the plaintiff as a result of his initial examination, he arranged for the plaintiff to undergo laboratory testing and to return for a follow-up visit. Quinn reexamined the plaintiff on March 26, 2001, at which time he placed the plaintiff on a prescription medication to control his hypertension.

On March 26, 2001, the plaintiff filed a notice of claim for heart and hypertension benefits with the workers' compensation commissioner for the fifth district (commissioner) pursuant to General Statutes §§ 7-433c[1] and 31-294c (a).[2] In that notice, the plaintiff alleged that he

[1] General Statutes § 7-433c (a) provides in relevant part: "[I]n the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment . . . ."

Claims under § 7-433c are governed by the procedures outlined in chapter 568 of the General Statutes, the Workers' Compensation Act, General Statutes § 31-275 et seq. See, e.g., *Gauger* v. *Frankl*, 252 Conn. 708, 712, 752 A.2d 1077 (2000).

[2] General Statutes § 31-294c (a) provides in relevant part: "No proceedings for compensation under the provisions of this chapter shall be maintained unless a written notice of claim for compensation is given within one year from the date of the accident or within three years from the first manifestation of a symptom of the occupational disease, as the case may be, which caused the personal injury . . . . Notice of a claim for compensation may be given to the employer or any commissioner . . . ."

In addition, General Statutes § 31-294b provides in relevant part: "Any employee who has sustained an injury in the course of his employment shall immediately report the injury to his employer, or some person representing his employer. . . ."

had developed hypertension on November 6, 2000, and that, consequently, he was eligible to receive benefits under § 7-433c. On March 8, 2001, prior to the plaintiff's filing of his notice of claim, the defendant had notified the commissioner of its intention to contest its liability for the plaintiff's claim[3] on two principal grounds: (1) the claim was untimely and thus barred by the statute of limitations set forth in § 31-294c (a); see footnote 2 of this opinion; and (2) the onset of the plaintiff's hypertension predated his employment with the defendant.

The commissioner thereafter held informal proceedings to determine whether the plaintiff's claim was compensable, focusing on, inter alia, the accuracy of the claimed date of injury, namely, November 6, 2000. As a result of those proceedings, the plaintiff filed a second notice of claim for heart and hypertension benefits on April 10, 2002, in which he reported a revised injury date of April 30, 2001.[4] The defendant responded by filing a second notice contesting liability for the plaintiff's claim on the same grounds advanced in its March 8, 2001 notice.

Formal proceedings ensued on August 21, 2002, and November 13, 2002. The commissioner rendered an

[3] General Statutes § 31-294c (b) provides in relevant part: "Whenever liability to pay compensation is contested by the employer, he shall file with the commissioner . . . a notice . . . stating that the right to compensation is contested, the name of the claimant, the name of the employer, the date of the alleged injury or death and the specific grounds on which the right to compensation is contested. . . ."

[4] In the proceedings before the commissioner, the defendant contended that when, as in the present case, an injured worker has not missed any time from work, the proper injury date is the date on which the injured worker was first prescribed medication to control his hypertension or heart disease. In response to that argument, the plaintiff revised his date of injury from November 6, 2000, to April 30, 2001, believing that the latter date was the date on which he was first prescribed medication for his hypertension. It was later revealed, however, that Quinn initially had prescribed medication for the plaintiff's hypertension on March 26, 2001.

award on December 19, 2002, concluding that the plaintiff was entitled to benefits under § 7-433c as a result of an injury that had occurred on March 26, 2001, the date on which the plaintiff was first prescribed medication for his hypertension. In his decision, the commissioner stated that there were only two issues before him: (1) whether the plaintiff had filed a timely claim for benefits; and (2) whether the plaintiff's preemployment physical revealed evidence of hypertension or heart disease. With respect to the first issue, the commissioner found that the plaintiff had afforded the defendant timely notice of his claim by virtue of the two notices that he had filed on March 26, 2001, and April 10, 2002, even though both notices cited an inaccurate date of injury. The commissioner also concluded that the plaintiff's claim was not barred by the statute of limitations because the defendant had failed to establish that it was either ignorant of the facts underlying the plaintiff's claim for benefits or that it was prejudiced by the plaintiff's inaccurate reporting of the date of injury. See General Statutes § 31-294c (c).[5] The commissioner also found that the plaintiff's preemployment physical failed to reveal any evidence of hypertension or heart disease and, therefore, rejected the defendant's second asserted defense. The commissioner determined that the plaintiff was entitled to benefits under § 7-433c but did not award the plaintiff any monetary benefits because the plaintiff had not missed any work as a result of his hypertension as of the close of the proceedings. Rather, the commissioner's award served merely to establish the plaintiff's right to recover from the defendant any compensable loss that he might suffer in the future as a result of his hypertension.

---

[5] General Statutes § 31-294c (c) provides in relevant part: "No defect or inaccuracy of notice of claim shall bar maintenance of proceedings unless the employer shows that he was ignorant of the facts concerning the personal injury and was prejudiced by the defect or inaccuracy of the notice. . . ."

The defendant appealed from the commissioner's award to the board in accordance with the procedures established by General Statutes § 31-301 (a).[6] The board rendered its decision on February 9, 2004, first noting that the issues presented for its review were twofold: "[w]hether the claim [was] untimely under § 31-294c . . . and whether the [plaintiff was] barred from recovering § 7-433c benefits because there was evidence of hypertension at his preemployment physical exam." The board answered both questions in the negative and, thus, affirmed the December 19, 2002 finding and award of the commissioner. Because the board's decision conclusively resolved the two issues raised by the defendant with respect to the commissioner's award, the board did not remand the case to the commissioner for further proceedings.

The defendant appealed from the board's decision to the Appellate Court pursuant to General Statutes § 31-301b,[7] challenging only that portion of the decision in which the board concluded that the plaintiff had asserted a timely claim. The Appellate Court thereafter ordered counsel for the parties "to appear and give reasons, if any, why the appeal should not be dismissed for lack of a final judgment because the decision of the . . . board appears to contemplate that further proceedings before the trial commissioner involving the calculation of benefits for the [plaintiff] will occur that may require the taking of additional evidence and the exercise of discretion." Following that hearing, the Appellate Court, sua sponte, dismissed the defendant's appeal for lack of a final judgment, citing *Quinn* v.

[6] General Statutes § 31-301 (a) provides in relevant part: "At any time within twenty days after entry of an award by the commissioner . . . either party may appeal therefrom to the Compensation Review Board . . . ."

[7] General Statutes § 31-301b provides: "Any party aggrieved by the decision of the Compensation Review Board upon any question or questions of law arising in the proceedings may appeal the decision of the Compensation Review Board to the Appellate Court."

*Standard-Knapp, Inc.,* 40 Conn. App. 446, 671 A.2d 1333 (1996), in support of the dismissal. The defendant appealed to this court from the order of the Appellate Court dismissing the appeal, and we granted certification to appeal limited to the following issue: "Did the Appellate Court properly dismiss this appeal for lack of a final judgment?" *Hunt* v. *Naugatuck,* 269 Conn. 916, 852 A.2d 742 (2004).

On appeal to this court, the defendant argues that the board's decision was final because the board did not remand the case to the commissioner for further proceedings in connection with the commissioner's award. Conversely, the plaintiff maintains that there will be further proceedings before the commissioner to establish the specific amount of benefits to which the plaintiff is entitled if and when he becomes partially or totally disabled. Since that determination will purportedly require the exercise of discretion and the taking of additional evidence, the plaintiff posits that the board's decision cannot be a final judgment. We agree with the defendant.

We begin by setting forth the relevant legal standards that guide our resolution of this appeal. "Pursuant to General Statutes § 31-315,[8] a workers' compensation award is always limited to a claimant's current condi-

---

[8] General Statutes § 31-315 provides in relevant part: "Any award of, or voluntary agreement concerning, compensation made under the provisions of this chapter . . . shall be subject to modification in accordance with the procedure for original determinations, upon the request of either party . . . whenever it appears to the compensation commissioner, after notice and hearing thereon, that the incapacity of an injured employee has increased, decreased or ceased, or that the measure of dependence on account of which the compensation is paid has changed, or that changed conditions of fact have arisen which necessitate a change of such agreement . . . [or] award . . . in order properly to carry out the spirit of this chapter. . . . The compensation commissioner shall retain jurisdiction over claims for compensation, awards and voluntary agreements, for any proper action thereon, during the whole compensation period applicable to the injury in question."

tion and [is] always subject to later modification upon the request of either party . . . if the complainant's condition changes." *Besade* v. *Interstate Security Services*, 212 Conn. 441, 444–45, 562 A.2d 1086 (1989). Consequently, the commissioner, in any given case, may issue multiple findings and awards throughout the period of compensability, with each award fixing the claimant's benefits as of the formal hearing date on the basis of the claimant's then existing condition. See, e.g., *Imbrogno* v. *Stamford Hospital*, 28 Conn. App. 113, 115–17, 612 A.2d 82, cert. denied, 223 Conn. 920, 615 A.2d 507 (1992). Either party may appeal to the board from an award rendered by the commissioner pursuant to § 31-301 (a). See footnote 6 of this opinion. Furthermore, under General Statutes § 31-301b, "[a]ny party aggrieved by the decision of the [board] upon any question or questions of law arising in the proceedings may appeal the decision of the [board] to the Appellate Court."

We have stated, however, that the Appellate Court's "review of disputed claims of law and fact ordinarily must await the rendering of a final judgment by the [board]." *Szudora* v. *Fairfield*, 214 Conn. 552, 556, 573 A.2d 1 (1990). When the board remands a case to the commissioner for further proceedings in connection with the challenged award, the finality of the board's decision is "called into question . . . ." Id. In such circumstances, "[t]he test that determines whether such a decision is a final judgment turns on the scope of the proceedings on remand: if such further proceedings are merely ministerial, the decision is an appealable final judgment, but if further proceedings will require the exercise of independent judgment or discretion and the taking of additional evidence, the appeal is premature and must be dismissed." Id. Finally, because the existence of a final judgment is a jurisdictional prerequisite to an appeal, the reviewing court may dismiss a case

on that ground even if the issue was not raised by the parties. See, e.g., *Quinn* v. *Standard-Knapp, Inc.*, supra, 40 Conn. App. 447.

Upon application of the foregoing principles, it is clear that the board's decision affirming the commissioner's award was a final judgment. In reaching our conclusion, we note that the plaintiff was not seeking an award of specific monetary benefits when he filed his notices on March 26, 2001, and April 10, 2002, because his hypertension had not ripened into a partial or total disability. Rather, the plaintiff's motivation for filing the notices when he did was to bring his claim within the statute of limitations period and to alert his employer that he had developed a condition, namely, hypertension, that could spawn a claim for monetary benefits in the future.[9] The commissioner's finding and award, therefore, merely involved a determination that the plaintiff was entitled to receive benefits under § 7-433c should he later sustain a compensable loss. The board's decision affirming the commissioner's award resolved that issue conclusively in favor of the plaintiff, and, therefore, it was not necessary to remand the case to the commissioner for further proceedings. Thus, under the principles announced in *Szudora* v. *Fairfield*, supra, 214 Conn. 556, the board's decision was a final judgment that was sufficient to invoke the jurisdiction of the Appellate Court.

---

[9] In *Pearce* v. *New Haven*, 76 Conn. App. 441, 449, 819 A.2d 878, cert. denied, 264 Conn. 913, 826 A.2d 1155 (2003), the Appellate Court concluded that timely notice is required by §§ 31-294b and 31-294c; see footnote 2 of this opinion; regardless of whether symptoms of hypertension or heart disease cause immediate permanent or partial disability. The court explained: "The reason for prior notice is to inform the employer of a possibility of a claim for benefits being filed at a later time . . . . The employee need not be disabled at the time he or she files a notice that symptoms are being experienced related to hypertension or heart disease . . . ." (Citation omitted.) *Pearce* v. *New Haven*, supra, 449.

Furthermore, even if the plaintiff were to file a claim for specific benefits in the future, that claim would not affect the finality of the board's decision for two reasons. First, the adjudication of that future claim would not entail a reevaluation of whether the plaintiff had asserted a timely, compensable claim; rather, it would merely involve a determination of the amount of benefits to which the plaintiff is entitled. Second, any future claim for specific benefits would be the subject of separate proceedings before the commissioner. See *Cleveland* v. *U.S. Printing Ink, Inc.*, 218 Conn. 181, 186, 588 A.2d 194 (1991).[10] Such proceedings would culminate in a new finding and award that would be independently appealable, without regard to the commissioner's December 19, 2002 award or the board's February 9, 2004 decision affirming that award. See General Statutes §§ 31-301 (a) and 31-301b.

Moreover, a claimant's benefits are always subject to modification as his or her condition changes. E.g., *Besade* v. *Interstate Security Services*, supra, 212 Conn. 444–45. Under the plaintiff's theory of the final judgment doctrine, however, "no workers' compensation award

---

[10] Our conclusion in the present case is supported by *Cleveland* v. *U.S. Printing Ink, Inc.*, supra, 218 Conn. 181. The claimant in *Cleveland* was employed as a truck driver for the defendant employer. Id., 182. During the course of his employment, the claimant was injured and thereafter filed a notice of his intention to claim benefits under the Workers' Compensation Act. Id. Following a hearing, the commissioner determined that the claimant was entitled to benefits. Id., 183. The commissioner's decision was affirmed by both the compensation review division, which is now known as the board, and the Appellate Court. Id. On appeal to this court, the employer argued, inter alia, that the decision of the compensation review division was not final because the claimant might file a claim for specific benefits in the future, and, therefore, the Appellate Court lacked jurisdiction over the appeal. See id., 185. In rejecting the employer's argument, we explained: "[B]ecause a future claim for specific benefits would require a separate proceeding before the commissioner, the possibility of such a claim does not affect the finality of the present decision of the [compensation] review division. Accordingly . . . the decision of the [compensation] review division was a final decision appealable pursuant to § 31-301b." Id., 186.

could ever be final, and therefore appealable, until the claimant either die[s] or recover[s], thereby ending the disability period." Id., 445. Such an approach would yield unjustifiable and unnecessary delays for both claimants and employers who have a legitimate need to turn to the Appellate Court in order to resolve disputed claims that have been adjudicated fully by the board. Indeed, at oral argument before this court, the plaintiff could not offer a sound reason why the board's decision should not be immediately appealable. Rather, the plaintiff's argument hinges solely on *Quinn* v. *Standard-Knapp, Inc.*, supra, 40 Conn. App. 446, to which the Appellate Court cites in its order dismissing the defendant's appeal. The plaintiff contends that *Quinn* supports his position because it illustrates that the "[m]ere establishment of liability does not constitute a 'final judgment.'" In our view, however, the plaintiff's and Appellate Court's reliance on *Quinn* is misplaced.

The facts of *Quinn* are distinguishable from the facts of the present case in at least two material respects. First, the plaintiff in *Quinn* already had become disabled and was seeking an award for specific monetary benefits as an integral part of the proceedings that gave rise to the appeal. See id., 448. Second and most importantly, in *Quinn*, the board had remanded the matter for further proceedings that were going to involve the taking of additional evidence, and, therefore, the board's decision did not constitute a final judgment under *Szudora*. See id., 448–49. Thus, contrary to the plaintiff's assertion, *Quinn* did not establish the sweeping proposition that any award that merely establishes an employer's liability for future benefits cannot be a final judgment. Rather, *Quinn* simply supports the notion that the finality of a decision of the board must be evaluated on a case-by-case basis, pursuant to the test imposed by *Szudora*.

Finally, we note that the plaintiff would not be prejudiced by the defendant's immediate appeal from the board's decision to the Appellate Court, assuming that the board properly concluded that the plaintiff's claim was timely. Under the workers' compensation statutory scheme, the commissioner retains jurisdiction over the plaintiff's case and can issue a timely award for specific monetary benefits if and when the plaintiff becomes disabled in the future. See General Statutes § 31-315.

For the foregoing reasons, we conclude that the board's decision constituted a final judgment, and, therefore, the Appellate Court improperly dismissed the defendant's appeal for lack of jurisdiction.

The order of the Appellate Court is reversed and the case is remanded to that court for further proceedings according to law.

In this opinion the other justices concurred.