******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JAMES STAUROVSKY *v.* CITY OF MILFORD POLICE
DEPARTMENT ET AL.
(AC 37670)

DiPentima, C. J., and Gruendel and Keller, Js.*

*Argued January 4—officially released March 29, 2016*

(Appeal from the Workers' Compensation Review
Board.)

*Michael V. Vocalina*, for the appellants (defendants).

*David J. Morrissey*, for the appellee (plaintiff).

*Opinion*

GRUENDEL, J. The defendants, the city of Milford Police Department (department) and its workers' compensation administrator, PMA Management Corp. of New England, appeal from the decision of the Workers' Compensation Review Board (board) affirming the decision of the Workers' Compensation Commissioner for the Fourth District (commissioner) awarding heart and hypertension benefits to the plaintiff, James Staurovsky, pursuant to General Statutes (Rev. to 2011) § 7-433c. On appeal, the defendants claim that the board improperly determined that (1) the plaintiff's claim was commenced in a timely manner and (2) the plaintiff had established a compensable claim for heart and hypertension benefits on the facts of this case.[1] We agree with the defendants' second claim and, accordingly, reverse the decision of the board.

Relevant to this appeal are the following facts found by the commissioner, as recounted in the board's decision. When the plaintiff was hired by the department, he passed a physical examination that did not reveal any evidence of heart disease or hypertension. The plaintiff thereafter "was employed by the [department] from October 5, 1987 to February 17, 2012, when he retired under a years of service pension. [His] last day of work was February 2, 2012, and he utilized unused vacation time to extend his service until February 17, 2012. On February 13, 2012, he started a new job as a campus police officer for Sacred Heart University. On February 24, 2012, the [plaintiff] sustained a myocardial infarction[2] while shoveling snow in his driveway. He was transported to St. Vincent's Hospital and had a stent inserted, and later underwent bypass surgery on April 9, 2012. The angiogram performed the day of the myocardial infarction indicated the [plaintiff] had severe coronary artery disease that affected four major arteries. The [plaintiff] testified that during his career with the [department] he had never been told by a physician that he had heart disease or hypertension and was not aware he had heart disease in January of 2012. . . . He also testified that he had never been disabled from working during his career with the [department] due to heart disease or hypertension.

"The [plaintiff's] cardiologist testified via a deposition. Dr. Victor Mejia testified that the [plaintiff's] coronary artery disease was a chronic disease that developed over a period of years. The [plaintiff] suffered from heart disease not only on the date of his myocardial infarction but also on January 30, 2012, his claimed date of injury. Dr. Mejia opined that it was reasonably medically probable that the percentage of the [plaintiff's] blockages had not changed dramatically after the date the [plaintiff] left his employment with the [department], as it was reasonable and probable the disease developed over a period of years. The [plaintiff's] heart

disease was a substantial factor in his myocardial infarction, as was the stress of snow shoveling. Dr. Mejia was unaware of any symptom of coronary artery disease present in the [plaintiff] before February 24, 2012. Dr. Mejia opined, based on his diagnosis of the [plaintiff], that the [plaintiff] qualified for a disability rating to his heart as of January, 2012; but had no evidence that the [plaintiff's] heart functioning was impaired at all in January, 2012.

"The [plaintiff] testified that he had concerns as to possibly having coronary artery disease in 2003, as it runs in his family. After discussion with a primary care doctor, the [plaintiff] was examined by Dr. Clifford Kramer, a cardiologist, on July 28, 2003. Dr. Kramer reported recommending a diet and exercise program for the [plaintiff], finding his lipid profile acceptable, and directed that the [plaintiff] undergo a stress test. The [plaintiff] underwent a stress test on August 19, 2003, that Dr. Kramer read as 'clinically and electrocardiographically negative.' . . .

"Based on these facts, the [commissioner] concluded in the Findings and Orders issued January 6, 2014, that the [plaintiff] was credible and persuasive. She found he was neither diagnosed nor treated for coronary artery disease until February 24, 2012, [and] therefore the notice of claim for § 7-433c . . . was filed in a timely manner. . . . The commissioner concluded [that] Dr. Mejia was credible and persuasive except for his opinion that the [plaintiff] qualified for a disability rating for his heart in January, 2012. . . . In the January Findings and Orders, in Conclusion, [paragraph] E, the [commissioner] concluded that in order to receive benefits under § 7-433c . . . the [plaintiff's] heart condition and the resulting disability had to be suffered while he was a member of the [department]. She concluded that while the [plaintiff's] disease was present while he was a member of the [department], he did not sustain any disability from that condition until he left [its] employ. Since he had not been disabled while employed by the [department], the commissioner concluded he did not meet the statutory requirements for an award under § 7-433c . . . .

"Both parties filed postjudgment motions subsequent to the January 6, 2014 Findings and Orders. The [plaintiff] filed a motion for reconsideration on January 15, 2014, asserting that the [commissioner] had improperly applied the law in the present case, and that, pursuant to *Arborio* v. *Windham Police Dept.*, [103 Conn. App. 172, 928 A.2d 616 (2007)] the [plaintiff] need not sustain a disability while a police officer or firefighter to have a viable claim for § 7-433c . . . benefits; rather that the [plaintiff] need only sustain an injury and file a claim within one year of that event. The [defendants] filed an objection to the motion for reconsideration, but on April 7, 2014, the [commissioner] issued Amended Findings

and Orders incorporating the [plaintiff's] bid for relief. In particular, the commissioner removed Conclusion, [paragraph] E from the prior Findings and Orders and replaced [it] with the following conclusions:

"G. The [plaintiff] suffered a condition or impairment of health due to heart disease on January 30, 2012. . . .

"H. The [plaintiff's] longstanding heart disease was a significant contributing factor in causing his heart attack.

"I. Despite the fact that the [plaintiff] was not disabled from his work as a police officer with the [department] due to his coronary artery disease (or due to the February 24, 2012 myocardial infarction) in January, 2012, he had developed a condition during his tenure as a police officer with the [department] that could spawn a claim for monetary benefits in the future.

"J. While proof of a disability is a prerequisite to the actual collection of benefits, one need not be disabled before being required to notify one's employer of an accidental injury and to file a claim within one year of that injury.

"K. The [plaintiff] is entitled to all benefits under [§] 7-433c, subject to the lawful limitations of [General Statutes §] 7-433b.

"The [defendants] filed a motion to correct seeking findings that the [plaintiff] had been advised in 2003 as to coronary artery disease and had been directed to make lifestyle changes. The [motion] also sought to add a conclusion that since the [plaintiff] had a statutory obligation to file a § 7-433c . . . claim in 2003 . . . the present claim was jurisdictionally untimely and should be dismissed. The [commissioner] denied this motion in its entirety . . . ." (Citation omitted; footnotes omitted.)

The defendants thereafter filed a petition for review of the commissioner's decision with the board. The board conducted a hearing on that petition on September 26, 2014. In its subsequent decision, the board affirmed the decision of the commissioner in all respects, and this appeal followed.

As a preliminary matter, we note that "[t]he principles that govern our standard of review in workers' compensation appeals are well established. . . . The board sits as an appellate tribunal reviewing the decision of the commissioner. . . . [T]he review . . . of an appeal from the commissioner is not a de novo hearing of the facts. . . . [T]he power and duty of determining the facts rests on the commissioner . . . . [T]he commissioner is the sole arbiter of the weight of the evidence and the credibility of witnesses. . . . Where the subordinate facts allow for diverse inferences, the commissioner's selection of the inference to be drawn must stand unless it is based on an incorrect application of

the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . .

"This court's review of decisions of the board is similarly limited. . . . The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . [W]e must interpret [the commissioner's finding] with the goal of sustaining that conclusion in light of all of the other supporting evidence. . . . Once the commissioner makes a factual finding, [we are] bound by that finding if there is evidence in the record to support it." (Internal quotation marks omitted.) *Baron* v. *Genlyte Thomas Group, LLC*, 132 Conn. App. 794, 799–800, 34 A.3d 423, cert. denied, 303 Conn. 939, 37 A.3d 155 (2012).

At the same time, "[c]ases that present pure questions of law . . . invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . We have determined, therefore, that the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . ." (Internal quotation marks omitted.) *Chambers* v. *Electric Boat Corp.*, 283 Conn. 840, 844, 930 A.2d 653 (2007). Our review in such instances is plenary. Id.

I

Because it implicates the jurisdiction of the commissioner to entertain the plaintiff's claim, we first address the defendants' contention that the board incorrectly determined that the plaintiff commenced his claim for heart disease and hypertension benefits in a timely manner. By contrast, the plaintiff submits that the board's determination properly adhered to the precedent of this state's appellate courts. We agree with the plaintiff.

Under Connecticut law, claims for heart disease and hypertension benefits filed pursuant to § 7-433c[3] are subject to the one year limitation period set forth in General Statutes § 31-294c (a). *Ciarlelli* v. *Hamden*, 299 Conn. 265, 278, 8 A.3d 1093 (2010). Section 31-294c (a) provides in relevant part that "[n]o proceedings for compensation under the provisions of this chapter shall be maintained unless a written notice of claim for compensation is given within one year from the date of the accident . . . which caused the personal injury . . . ." Failure to comply therewith deprives the commissioner of subject matter jurisdiction over a claim. See, e.g., *Izikson* v. *Protein Science Corp.*, 156 Conn. App. 700, 708, 115 A.3d 55 (2015); *Wikander* v. *Asbury Automotive Group/David McDavid Acura*, 137 Conn.

App. 665, 670, 50 A.3d 901 (2012).

As this court recently observed, "[i]n *Ciarlelli*, our Supreme Court clarified the standard for assessing when the one year limitation period provided by § 31-294c (a) begins to run for claims filed pursuant to § 7-433c. . . . [O]ur Supreme Court held that this . . . one year limitation period begins to run only when the plaintiff is informed by a medical professional that he or she has been diagnosed with hypertension. . . . Our Supreme Court concluded by stating that, although the issue of when the one year limitation period pursuant to § 31-294c begins to run remains a question of fact for the trial commissioner, evidence that an employee merely knew of past elevated blood pressure readings, or was advised by his or her physician to make certain lifestyle changes in response thereto, is not sufficient to trigger the limitation period in the absence of evidence that the employee formally had been diagnosed with hypertension by a medical professional and advised of that diagnosis. . . . Our Supreme Court stated in a footnote that this standard is not so inflexible as to require a finding in all cases that the medical professional used the term hypertension in communicating the diagnosis to the employee. . . . Thus, in essence, our Supreme Court adopted a totality of the circumstances test that puts substance before form when determining whether a plaintiff had been diagnosed with hypertension as opposed to having been put on notice that he had high blood pressure readings." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *Conroy* v. *Stamford*, 161 Conn. App. 691, 703–704, 129 A.3d 137 (2015), cert. denied, 320 Conn. 917,    A3d    (2016).

In cases subsequent to *Ciarlelli*, our appellate courts have applied that interpretation of § 31-294c (a). For example, in *Roohr* v. *Cromwell*, 302 Conn. 767, 771, 31 A.3d 360 (2011), the Supreme Court affirmed the dismissal of a plaintiff's claim for § 7-433c benefits because the record substantiated the commissioner's finding that "the plaintiff was, in fact, diagnosed with hypertension and informed of that diagnosis more than one year before he filed his claim . . . ."

Particularly pertinent to the present appeal is *Conroy* v. *Stamford*, supra, 161 Conn. App. 691. In that case, the commissioner determined that "because the [plaintiff] was not formally diagnosed with hypertension until January 6, 2012 . . . [his] notice of claim for benefits pursuant to § 7-433c . . . dated April 9, 2012, was therefore timely." (Internal quotation marks omitted.) Id., 700. On appeal, the defendant argued that the commissioner "should have concluded that the one year limitation period for filing a claim under § 7-433c began to run on January 30, 2008, when [his primary care physician] gave the plaintiff the option of taking medication for his high blood pressure." Id., 701. This court

disagreed with that contention, stating in relevant part that the primary care physician "testified in his deposition . . . that he did not diagnose the plaintiff with hypertension during the January 30, 2008 visit. . . . Although the defendant argues that the mere fact that [the primary care physician] offered the plaintiff the option of going on medication during his January 30, 2008 visit strongly suggests that the plaintiff received a diagnosis of hypertension, we conclude that [the primary care physician's] offer of the medication option to the plaintiff was not tantamount to a diagnosis of hypertension for purposes of §§ 31-294c (a) and 7-433c. . . . [O]ur review of the totality of the circumstances surrounding the plaintiff's January 30, 2008 visit does not support the conclusion that he received a formal diagnosis of hypertension during that visit. The plaintiff was merely offered the option of going on medication as opposed to being prescribed medication during that visit. When this evidence is coupled with evidence that (1) [the primary care physician] told the plaintiff that he was 'in pretty good shape' during that same visit, (2) the plaintiff lowered his blood pressure readings to normal levels through diet and exercise shortly after that visit, (3) the plaintiff's March 21, 2008 echocardiogram results were not indicative of hypertension, and (4) no other medical professional diagnosed the plaintiff with hypertension prior to January 6, 2012, we are left with the firm conviction that the board's affirmance of the trial commissioner's finding that the plaintiff was not formally diagnosed with hypertension until January 6, 2012, was proper." (Citations omitted; emphasis omitted.) Id., 706–708.

That precedent is dispositive of the defendants' claim. Although the plaintiff in the present case consulted with a cardiologist in 2003, due to concerns about his family's history of coronary artery disease, that cardiologist did not inform him of a heart disease or hypertension diagnosis. See *Ciarlelli* v. *Hamden*, supra, 299 Conn. 300. To the contrary, the cardiologist informed the plaintiff that his lipid profile was acceptable and that the results of a stress test were "clinically and electrocardiographically negative." Although it is undisputed that the cardiologist at that time recommended a diet and exercise program for the plaintiff, our Supreme Court in *Ciarlelli* emphasized that "evidence that an employee merely knew of past elevated blood pressure readings, or was advised by his or her physician to make certain lifestyle changes in response thereto, is not sufficient to trigger the limitation period in the absence of evidence that the employee formally had been diagnosed with hypertension by a medical professional and advised of that diagnosis." *Ciarlelli* v. *Hamden*, supra, 301. In the present case, the plaintiff testified that the cardiologist never diagnosed him with any heart related ailment. The commissioner expressly credited that testimony, as was her exclusive prerogative as the trier

of fact. See *Ayna* v. *Graebel/CT Movers, Inc.*, 133 Conn. App. 65, 71, 33 A.3d 832 (commissioner possesses sole discretion to determine credibility of witnesses), cert. denied, 304 Conn. 905, 38 A.3d 1201 (2012); *Mele* v. *Hartford*, 118 Conn. App. 104, 107, 983 A.2d 277 (2009) (commissioner is sole arbiter of weight of evidence and credibility of witnesses). Furthermore, unlike *Roohr* v. *Cromwell*, supra, 302 Conn. 770, there is no testimonial or documentary evidence in the record indicating that the cardiologist apprised the plaintiff of such a diagnosis. Accordingly, we conclude that the totality of the circumstances surrounding his 2003 consultation with that cardiologist does not support the conclusion that the plaintiff received a heart disease or hypertension diagnosis at that time.

Rather, the relevant findings of the commissioner, which are substantiated by the evidentiary record before us, indicate that the plaintiff first was informed of such a diagnosis on February 24, 2012. On that date, the plaintiff suffered a myocardial infarction and had an angiogram performed, which confirmed that he had severe coronary artery disease affecting four major arteries. Because the plaintiff filed his form 30C[4] less than one month later, it was timely under § 31-294c. The defendants' jurisdictional challenge, therefore, fails.

## II

The defendants also claim that the board improperly affirmed the commissioner's conclusion that the plaintiff had established a compensable claim under § 7-433c. Specifically, they maintain that the plaintiff is ineligible for heart disease and hypertension benefits because he did not suffer "any condition or impairment of [his] health caused by hypertension or heart disease," as that language is used in § 7-433c, during the course of his employment with the department. Our analysis of the defendants' claim is twofold in nature. We first review the relevant law regarding compensability under § 7-433c. We then apply that law to the commissioner's ultimate conclusion, expressed in her April 7, 2014 Amended Findings and Orders, that the plaintiff "suffered a condition or impairment of health due to heart disease" while employed as a police officer with the department.

## A

In claiming that the plaintiff has not established a compensable claim under § 7-433c, the defendants submit that the plaintiff is ineligible for heart disease and hypertension benefits because he did not suffer "any condition or impairment of [his] health caused by hypertension or heart disease" while employed by the department. The defendants thus contend that this case is controlled by *Gorman* v. *Waterbury*, 4 Conn. App. 226, 231–33, 493 A.2d 286 (1985), which held that the exis-

tence of heart disease or hypertension alone does not satisfy the statutory requirements of § 7-433c. In response, the plaintiff argues that this court has overruled that precedent sub silentio.

Before considering the vitality of *Gorman*, some additional context is necessary. "The statute concerning heart disease and hypertension was originally drafted as part of the Workers' Compensation Act [General Statutes § 31-275 et seq.] and provided police officers and firefighters with a rebuttable presumption that heart disease and hypertension were causally connected to their occupations. . . . In 1969, this rebuttable presumption was made conclusive and the statute was soon declared unconstitutional [by our Supreme Court]. . . . In response to that problem, § 7-433c was enacted in its present form in 1977 as legislation separate and distinct from the Workers' Compensation Act." (Citations omitted.) *Zaleta* v. *Fairfield*, 38 Conn. App. 1, 7, 658 A.2d 166, cert. denied, 234 Conn. 917, 661 A.2d 98 (1995).

Section § 7-433c (a) provides in relevant part that "in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, *suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability,* he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 . . . ." (Emphasis added.)

As our Supreme Court has explained, § 7-433c provides "special compensation to qualifying policemen and firemen who die or become disabled as a result of hypertension or heart disease." (Internal quotation marks omitted.) *Chambers* v. *Electric Boat Corp.*, supra, 283 Conn. 858 n.11. The statute "was enacted for the purpose of placing policemen who die or are disabled as a result of hypertension or heart disease in the same position vis-a-vis compensation benefits as policemen who die or are disabled as a result of service related injuries." (Internal quotation marks omitted.) *Lambert* v. *Bridgeport*, 204 Conn. 563, 566–67, 529 A.2d 184 (1987). The statute thus permits "firefighters and police officers . . . who suffer from heart disease or hypertension outside the line of duty to collect benefits in the same manner as those who are injured in the line of duty." *Zaleta* v. *Fairfield*, supra, 38 Conn. App. 5–6. Accordingly, under § 7-433c, "the claimant is not required to prove that the heart disease is causally connected to [his or her] employment, which he [or she]

would ordinarily have to establish in order to receive benefits pursuant to the Workers' Compensation Act." (Internal quotation marks omitted.) *Carter* v. *Clinton*, 304 Conn. 571, 578, 41 A.3d 296 (2012); see also *Bakelaar* v. *West Haven*, 193 Conn. 59, 68–69, 475 A.2d 283 (1984) (§ 7-433c "confers benefits to qualifying claimants for impairments sustained 'either off duty or on duty,' without proof that the condition arose out of and in the course of employment"). Rather, "[i]n order to collect the benefits provided by § 7-433c, a claimant [must establish] that he or she is a uniformed member of a paid fire department or a regular member of a paid police department, whose preemployment physical examination revealed no evidence of hypertension or heart disease, who now suffers a condition or an impairment of health caused by hypertension or heart disease that has resulted in death or disability, and has suffered a resultant economic loss." *Zaleta* v. *Fairfield*, supra, 5.

1

This case concerns the applicability of that special compensation statute to a claimant who does not suffer any impairment caused by hypertension or heart disease while employed as a police officer that results in death or disability, but rather first suffers such an impairment following his retirement from the police department. Although numerous are the appellate decisions addressing § 7-433c, almost all involve claimants who suffered an injury or impairment attributable to heart disease or hypertension during the course of their employment as police officers or firefighters. See, e.g., *Ciarlelli* v. *Hamden*, supra, 299 Conn. 269–70 (claimant placed on "prescription antihypertensive medication" due to "abnormally high" blood pressure months prior to retirement); *Marone* v. *Waterbury*, 244 Conn. 1, 4, 707 A.2d 725 (1998) (claimant received hypertension diagnosis and "10 percent disability [rating] of his cardiovascular system" prior to retirement); *Hyatt* v. *Milford*, 224 Conn. 441, 443 n.2, 619 A.2d 450 (1993) (claimant "was a uniformed fire fighter for the city of Milford at the time he incurred his disability" who "subsequently retired"); *Lambert* v. *Bridgeport*, supra, 204 Conn. 565 (claimant "suffered a heart attack, which disabled him from performing his duties as a patrol officer" months prior to retirement). Those decisions, therefore, are inapposite to the present case.

Our research reveals only one instance in which the distinct issue before us has been presented to, and decided by, an appellate court of this state.[5] In *Gorman* v. *Waterbury*, supra, 4 Conn. App. 230, the plaintiff's husband "was employed for many years as a regular uniformed member of the Waterbury police department. He passed a pre-employment physical examination which revealed no evidence of heart disease or hypertension. He retired on October 30, 1971, primarily due to his failing vision. He suffered from a hypertensive

condition from 1967 until his death, which occurred on September 7, 1972, due to heart disease." Significantly, "[t]he hypertension did not have any disabling effects on [the plaintiff's husband] during his tenure as a police officer." Id. For that reason, when the plaintiff sought benefits under § 7-433c following his passing, the commissioner denied that request "because the death of her husband due to heart disease, which was the basis of the claim, occurred when he was no longer a police officer." Id.

On appeal to this court, the plaintiff argued that "to qualify for benefits under [§ 7-433c], only the condition of hypertension or heart disease need be suffered while on duty or off duty by a regular member of a police department." Id., 231. Put differently, the plaintiff's position was that the statute required only the existence of hypertension or heart disease during her husband's employment as a police officer, and not the manifestation of a condition or impairment caused by hypertension or heart disease that resulted in death or disability during that time. This court rejected that argument, stating: "Under this argument, the employee's death or disability resulting from hypertension or heart disease need not occur while he is employed as a regular police officer, but can occur after termination of that employment. A fair reading of the statute, however, reveals that both the condition of hypertension or heart disease *and* the death or disability resulting from such a condition must be suffered while the individual was on or off duty as a regular member of a police or fire department. . . . [Section § 7-433c] provides benefits to qualified police and fire department members because these individuals are more susceptible to the types of ailments denoted. . . . It is intended to place these employees in the same compensation position as those who are injured in the line of duty. . . . Unlike a police officer on active status, the plaintiff's husband could not have been injured in the line of duty because he was retired, and the statute could not have intended to grant benefits to him as if he had been so injured. The statute contemplates that a recipient of its benefits be an active, not retired, member of a paid municipal police or fire department or the dependent of such an active member." (Citations omitted; emphasis in original.) Id., 231–32.

For that reason, this court concluded that "[t]he plaintiff's husband did not meet the eligibility requirements of the statute. He suffered hypertension while he was a regular member of a paid municipal police department, fulfilling part of the statutory requirements. He did not, however, die or suffer any disability from the hypertensive condition while so employed, as the statute further requires. Under these facts, the plaintiff's husband was not entitled to benefits under [§] 7-433c . . . ." (Footnote omitted.) Id., 233.

*Gorman* thus instructs that proof of heart disease or hypertension during a claimant's period of employment as a police officer or firefighter alone is insufficient to satisfy the statutory criteria of § 7-433c. Rather, to qualify for benefits pursuant to § 7-433c, the claimant must establish the existence of a "condition or impairment of health caused by hypertension or heart disease" during that time period, which results in the claimant's death or disability, as the plain language of § 7-433c requires.[6]

As our Supreme Court has noted, "case law dictates that we should be especially wary of overturning a decision that involves the construction of a statute. . . . When we construe a statute, we act not as plenary lawgivers but as surrogates for another policy maker, [that is] the legislature. In our role as surrogates, our only responsibility is to determine what the legislature, within constitutional limits, intended to do. Sometimes, when we have made such a determination, the legislature instructs us that we have misconstrued its intentions. We are bound by the instructions so provided. . . . More often, however, the legislature takes no further action to clarify its intentions. Time and again, we have characterized the failure of the legislature to take corrective action as manifesting the legislature's acquiescence in our construction of a statute. . . . Once an appropriate interval to permit legislative reconsideration has passed without corrective legislative action, the inference of legislative acquiescence places a significant jurisprudential limitation on our own authority to reconsider the merits of our earlier decision." (Internal quotation marks omitted.) *Hummel* v. *Marten Transport, Ltd.*, 282 Conn. 477, 494–95, 923 A.2d 657 (2007); see also *McDonough* v. *Connecticut Bank & Trust Co.*, 204 Conn. 104, 119, 527 A.2d 664 (1987) ("[w]e presume that the legislature is aware of our interpretation of a statute, and that its subsequent nonaction may be understood as a validation of that interpretation").

That maxim informs our analysis in the present case. *Gorman* was decided by this court more than thirty years ago. Although our General Assembly has since amended § 7-433c on multiple occasions; see, e.g., Public Acts 2014, No. 14-122, § 72; Public Acts 1996, No. 96-230, § 2; Public Acts 1992, No. 92-81, § 1; it nonetheless has not taken any corrective action in response to this court's construction of the requirements of § 7-433c in *Gorman*. We, therefore, must presume that the legislature concurs with that construction. See *Ciarlelli* v. *Hamden*, supra, 299 Conn. 284–85 n.12.

Furthermore, "it is axiomatic that one panel of this court cannot overrule the precedent established by a previous panel's holding." (Internal quotation marks omitted.) *Samuel* v. *Hartford*, 154 Conn. App. 138, 144, 105 A.3d 333 (2014). As we often have stated, "this court's policy dictates that one panel should not, on its own, reverse the ruling of a previous panel. The reversal

may be accomplished only if the appeal is heard en banc." (Internal quotation marks omitted.) *Boccanfuso* v. *Conner*, 89 Conn. App. 260, 285 n.20, 873 A.2d 208, cert. denied, 275 Conn. 905, 882 A.2d 668 (2005). "Prudence, then, dictates that this panel decline to revisit" such requests. *First Connecticut Capital, LLC* v. *Homes of Westport, LLC*, 112 Conn. App. 750, 759, 966 A.2d 239 (2009). We therefore refuse to disturb the statutory construction set forth in *Gorman*.

2

The plaintiff nevertheless suggests that this court did exactly that in *Arborio* v. *Windham Police Dept.*, supra, 103 Conn. App. 172.[7] Before both the commissioner and the board, the plaintiff successfully argued that *Arborio* effectively overruled the construction of § 7-433c enunciated in *Gorman*. That position, however, is predicated on a faulty premise.

Whereas *Gorman* concerned an issue of compensability under § 7-433c, *Arborio* involved a jurisdictional question under § 31-294c (a)—how to properly measure its one year time limitation in the context of a claim for benefits under § 7-433c. In an earlier decision, this court had held that the limitation period began to run when the claimant learned of his elevated blood pressure readings, rather than when he was diagnosed with hypertension. *Pearce* v. *New Haven*, 76 Conn. App. 441, 449–50, 819 A.2d 878, cert. denied, 264 Conn. 913, 826 A.2d 1155 (2003). In *Arborio*, this court adhered to that holding while concluding that the plaintiff's knowledge of high blood pressure readings and results of a stress test at several office visits was insufficient to support the conclusion that he had sustained an accidental injury that required him to notify his employer and to file a claim for benefits under § 7-433c. *Arborio* v. *Windham Police Dept.*, supra, 103 Conn. App. 186–88. In our analysis, this court noted that "[c]ertainly, proof of a disability is a prerequisite to the actual collection of benefits, but one need not be disabled before being required to notify one's employer of an accidental injury and to file a claim within one year of that injury." Id., 177. At the same time, this court also recognized that a claimant "must have had some type of accidental injury (not necessarily an *immediately* disabling injury) before being required to file a claim." (Emphasis added.) Id., 187. As this court emphasized, "pursuant to § 31-294c (a), the employee not only must notify his employer of the accident, but he also must file a claim for benefits within one year of the date of the accident." Id., 178–79.

*Arborio* thus is consonant with *Gorman*, insofar as those opinions both recognize that claimants must suffer some impairment or injury during the course of their employment as police officers or firefighters that result from their hypertension or heart disease. *Arborio* merely indicates that if a claimant suffers such impair-

ment, that injury need not ripen into a final disability rating or death prior to *the commencement of a claim* with the commissioner pursuant to § 31-294c. Accord *Hunt* v. *Naugatuck*, 273 Conn. 97, 99, 105, 868 A.2d 54 (2005) (although plaintiff sustained impairment during course of employment as police officer in that he was "placed . . . on a prescription medication to control his hypertension" following "abnormally high" blood pressure readings, "the plaintiff was not seeking an award of specific monetary benefits when he filed his [notice of claim pursuant to § 31-294c] because his hypertension had not ripened into a partial or total disability"); *Black* v. *London & Egazarian Associates, Inc.*, 30 Conn. App. 295, 303, 620 A.2d 176 ("[t]he purpose of § 31-294 . . . is to alert the employer to the fact that a person has sustained an injury that *may* be compensable . . . and that such person is claiming *or proposes to claim* compensation" [citation omitted; emphasis altered; internal quotation marks omitted]), cert. denied, 225 Conn. 916, 623 A.2d 1024 (1993). *Arborio* did not resolve an issue of compensability under § 7-433c; it simply determined, as a jurisdictional matter, that "the commissioner's determination that the plaintiff's claim was untimely is not supported by the commissioner's factual findings"; *Arborio* v. *Windham Police Dept.*, supra, 103 Conn. App. 185; and therefore remanded the matter to the board "with direction to reverse the determination of the commissioner and to remand the case to the commissioner for further proceedings in accordance with law."[8] Id., 188.

What distinguishes *Gorman* from *Arborio*—and other cases in which claimants were deemed eligible for heart disease and hypertension benefits under § 7-433c—is the undisputed fact that, during his period of employment as a police officer, Gorman did not experience any impairment of health attributable to his hypertension. See *Gorman* v. *Waterbury*, supra, 4 Conn. App. 230. That is precisely the situation presented in the case before us.

B

We therefore turn our attention to the commissioner's ultimate determination that the plaintiff "suffered a condition or impairment of health due to heart disease on January 30, 2012." We conclude that this determination lacks evidentiary support in the administrative record and results from an incorrect application of the law to the subordinate facts found. See *Baron* v. *Genlyte Thomas Group, LLC*, supra, 132 Conn. App. 799–800.

In her original findings and orders dated January 6, 2014, the commissioner credited the plaintiff's testimony that "he was never disabled from working for the city of Milford during his time with the [department] due to heart disease or hypertension." The commissioner also credited Mejia's testimony that the plaintiff "suffered from heart disease not only on the date of

his myocardial infarction, February 24, 2012, but also on January 30, 2012, his claimed date of injury"; that he "is not aware of any symptom of coronary artery disease present in the [plaintiff] before February 24, 2012"; and that he "has no evidence that the [plaintiff's] heart functioning was impaired at all in January, 2012." The commissioner thus concluded that although the plaintiff "suffered coronary artery disease while he was a regular member of the [department]," he "did not suffer any disability from that condition while so employed, as [§ 7-433c] requires."

Following the filing of the plaintiff's motion for reconsideration, in which the plaintiff relied principally on this court's decision in *Arborio*, the commissioner on April 7, 2014, entered her Amended Findings and Orders. Those amended findings incorporated by reference her previous findings (1) that the plaintiff was never disabled from working for the city of Milford during his time with the department due to heart disease or hypertension; (2) that Mejia was not aware of any symptom of heart disease present in the plaintiff prior to February 24, 2012; and (3) that Mejia had no evidence that the plaintiff's heart functioning was impaired at all in January, 2012. Those findings all are substantiated by the administrative record before us. The commissioner nevertheless vacated her earlier finding that the plaintiff did not suffer any impairment caused by his heart disease while employed by the department. Instead, she concluded that the plaintiff "suffered a condition or impairment of health due to heart disease on January 30, 2012."

For two reasons, we conclude that this finding cannot stand. First, it lacks evidential support in the administrative record before us. Although Mejia testified, and the commissioner so found, that the plaintiff had heart disease in January, 2012, prior to his February 17, 2012 retirement, there simply is no evidence in the record indicating that the plaintiff suffered "any condition or impairment of health caused by" his heart disease that has resulted in death or disability while employed as a police officer, as § 7-433c plainly requires. The plaintiff testified at the March 20, 2013 hearing before the commissioner that he never suffered any disability and never had any heart issues or complaints during his tenure with the department. Mejia, the plaintiff's cardiologist, likewise testified at his June 19, 2013 deposition, which was admitted as an exhibit before the commissioner, that he had no knowledge that the plaintiff possessed any symptoms of coronary artery disease prior to February 24, 2012, and further that he did not have any evidence that the functioning of the plaintiff's heart was impaired in any manner prior to his retirement from the department. For those reasons, the commissioner found, in both her January 6, 2014 and April 7, 2014 decisions, that neither the plaintiff nor Mejia was aware of any impairment of the plaintiff's heart

prior to his February 24, 2012 heart attack. Those findings directly contradict the commissioner's ultimate conclusion that the plaintiff "suffered a condition or impairment of health" on January 30, 2012, that was caused by his heart disease. The administrative record in this case is bereft of evidence to substantiate that determination.

Second, the commissioner's ultimate conclusion, and the board's subsequent affirmance thereof, suffers the same infirmity as the position advanced by the plaintiff widow in *Gorman*, insofar as it presumes that the existence of heart disease itself is sufficient to satisfy the statutory imperative of § 7-433c that a claimant demonstrate that he or she suffered a "condition or impairment of health caused by hypertension or heart disease" that resulted in death or disability while employed as a municipal firefighter or police officer. That presumption is contrary to Connecticut law, as established in *Gorman*, which held that the existence of heart disease or hypertension alone does not satisfy the statutory requirements of § 7-433c. *Gorman* v. *Waterbury*, supra, 4 Conn. App. 231–33.

In neither the proceedings before the commissioner nor this appeal has the plaintiff claimed that he suffered any condition or impairment of health caused by his heart disease that has resulted in death or disability during his tenure as a police officer with the department.[9] Furthermore, the administrative record before us lacks any evidence so indicating. That record instead indicates that the plaintiff first suffered an impairment of health caused by his heart disease on February 24, 2012, when he suffered a heart attack while shoveling snow. That impairment arose after the plaintiff had retired from his employment as a police officer with the department. Bound by the precedent set in *Gorman*, we therefore conclude that the board improperly affirmed the commissioner's determination that the plaintiff had established a compensable claim for heart disease and hypertension benefits pursuant to §7-433c.

The decision of the Workers' Compensation Review Board is reversed and the case is remanded to the board with direction to sustain the defendants' appeal.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The defendants also claim that the board improperly affirmed the commissioner's denial of their February 14, 2014 and April 21, 2014 motions to correct. We need not address that contention in light of our resolution of the defendants' second claim.

[2] "Myocardial infarction is a synonym for heart attack . . . ." *Doyle* v. *Kamm*, 133 Conn. App. 25, 37 n.8, 35 A.3d 308 (2012).

[3] Titled "Benefits for policemen or firemen disabled or dead as a result of hypertension or heart disease," General Statutes (Rev. to 2011) § 7-433c provides: "(a) Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance to the contrary, in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed

to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and from the municipal or state retirement system under which he is covered, he or his dependents, as the case may be, shall receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment. If successful passage of such a physical examination was, at the time of his employment, required as a condition for such employment, no proof or record of such examination shall be required as evidence in the maintenance of a claim under this section or under such municipal or state retirement systems. The benefits provided by this section shall be in lieu of any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of chapter 568 or the municipal or state retirement system under which he is covered, except as provided by this section, as a result of any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability. As used in this section, the term 'municipal employer' shall have the same meaning and shall be defined as said term is defined as provided in section 7-467.

"(b) Notwithstanding the provisions of subsection (a) of this section, those persons who began employment on or after July 1, 1996, shall not be eligible for any benefits pursuant to this section."

In 2014, our General Assembly amended the last sentence of subsection (a) of § 7-433c, which now provides: "As used in this section, 'municipal employer' has the same meaning as provided in section 7-467." That technical revision has no bearing on the issues presented in this appeal.

[4] "A form 30C is the document prescribed by the workers' compensation commission to be used when filing a notice of claim pursuant to the [Workers' Compensation Act, General Statutes § 31-275 et seq.]." (Internal quotation marks omitted.) *Lamar* v. *Boehringer Ingelheim Corp.*, 138 Conn. App. 826, 828 n.3, 54 A.3d 1040, cert. denied, 307 Conn. 943, 56 A.3d 951 (2012).

[5] The plaintiff has provided this court with no authority in which a claimant has been deemed eligible for heart disease and hypertension benefits pursuant to § 7-433c when the "condition or impairment of health caused by hypertension or heart disease" first arose subsequent to the claimant's retirement from the police or fire department.

[6] Had the court in *Gorman* accepted the plaintiff's contention that the existence of hypertension or heart disease itself constituted the impairment required under § 7-433c, it would have contravened the "basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions. . . . [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous. . . . Because [e]very word and phrase [of a statute] is presumed to have meaning . . . [a statute] must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant." (Internal quotation marks omitted.) *Fairchild Heights, Inc.* v. *Dickal*, 305 Conn. 488, 500, 45 A.3d 627 (2012). The General Assembly, in establishing the criteria for heart disease and hypertension benefits in § 7-433c, did not simply state that police officers or firefighters who suffer from hypertension or heart disease qualify for such benefits. Rather, our legislature specifically provided that a police officer or firefighter must suffer "either off duty or on duty *any condition or impairment of health caused by* hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability . . . ." (Emphasis added.) General Statutes § 7-433c; cf. *Malchik* v. *Division of Criminal Justice*, 266 Conn. 728, 740, 835 A.2d 940 (2003) (in enacting § 7-433c, legislature intended "to afford the named occupations with a bonus . . . when, *under the appropriate conditions*, the employee suffered heart disease or hypertension" [emphasis added]). In rejecting the plaintiff's contention, the court in *Gorman* thus gave effect to every word in that statutory provision.

[7] The plaintiff also suggests that our Supreme Court ratified *Arborio*'s alleged disavowal of *Gorman* in *Ciarlelli* v. *Hamden*, supra, 299 Conn. 278.

That assertion is untenable. The distinct question presented in *Ciarlelli* was "when the one year limitation period of [§] 31-294c (a) begins to run on a claim for hypertension benefits under [§] 7-433c." (Footnote omitted.) Id., 267. In answering that question, our Supreme Court expressly abrogated the standards set forth in *Arborio* and *Pearce* v. *New Haven*, 76 Conn. App. 441, 449, 819 A.2d 878, cert. denied, 264 Conn. 913, 826 A.2d 1155 (2003), and instead held that "a formal diagnosis of hypertension or heart disease, communicated to an employee by his or her physician, constitutes the 'injury' that triggers the running of the limitation period of § 31-294c." *Ciarlelli* v. *Hamden*, supra, 299. Although the court acknowledged that this court in *Arborio* opined that a claimant need only demonstrate an injury or manifestation resulting from heart disease or hypertension during the course of his or her employment, and not proof of disability at that time; id., 293–94; our Supreme Court did not weigh in on that particular issue. Indeed, no such issue was raised in *Ciarlelli*. Put simply, *Ciarlelli* concerned reviewability under § 31-294c, and not compensability under § 7-433c.

[8] "It is axiomatic that an appellate decision stands only for those issues presented to, and considered by, the court in that particular appeal." *Dept. of Public Safety* v. *Freedom of Information Commission*, 103 Conn. App. 571, 582 n.10, 930 A.2d 739, cert. denied, 284 Conn. 930, 934 A.2d 245 (2007); see also *Valeriano* v. *Bronson*, 209 Conn. 75, 91, 546 A.2d 1380 (1988) ("discussion in a judicial opinion that goes beyond the facts involved in the issues is mere dictum and does not have the force of precedent"). The distinct issue of whether a claimant, who suffers no condition or impairment of health caused by hypertension or heart disease until after retiring from the fire or police department, may recover benefits under § 7-433c was neither raised by the parties nor decided by the court in *Arborio*, *Ciarlelli*, or any other appellate decision of this state other than *Gorman*.

[9] At oral argument before this court, the plaintiff's counsel conceded that the plaintiff "never had any indication of any kind of coronary problems" while he was employed as a police officer with the department. Instead, he stated that the plaintiff's heart disease "did not manifest itself" until after he retired.